*:kovacs decision.09/07/07.14*


UNITED STATES
BANKRUPTCY COURT
FILED

2007 SEP 11 PM 2:59

C.L. AUSTIN, CLERK
MILWAUKEE, WISCONSIN

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

In re:

NANCY E. KOVACS,

      Debtor.

Chapter 7 Proceedings

Case No. 01-27782-jes

---

NANCY E. KOVACS,

      Plaintiff,

-v-

UNITED STATES OF AMERICA,

      Defendant.

Adversary No. 05-2462

---

# D E C I S I O N

---

      This adversary proceeding is a classic illustration of how a mistake by both sides on the issue of dischargeability of certain tax debts and which issue has been fueled by extensive over-lawyering can turn a mole hill into a huge mountain.

      This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

## FACTUAL BACKGROUND

The key events involved occurred over a span of the following three time periods:

1.  Prior to the commencement of this adversary proceeding (March 2002 through August 2005) (Phase I);

2.  From commencement of adversary proceeding to commencement of trial (August 2005 to March 2007) (Phase II); and

3.  The trial and related post-trial matters (March, 2007 to present time) (Phase III).

## PHASE I

On September 3, 1996, Nancy Kovacs ("Kovacs"), the debtor in the above-entitled adversary proceeding, and the Internal Revenue Service ("IRS"), entered into an offer in compromise ("OIC") resolving Kovacs' tax liabilities for the years 1990, 1991, 1993, 1994, and 1995 ("tax years in question"). One requirement of the OIC was that Kovacs timely file her federal tax returns and pay all taxes due for the five years after the 1996 OIC was accepted by the IRS.

Kovacs was unable to pay her federal tax liability for the year 1999 in the amount of approximately $2,300. On September 13, 2000, the IRS informed Kovacs that she had defaulted under the terms of the OIC and that her failure to pay the 1999 tax liability could result in the termination of the OIC. On January 29, 2001, the IRS notified Kovacs that, because of her failure to pay the 1999 tax liability, the OIC was being terminated immediately and any outstanding unpaid liabilities for the years in question were being reinstated.

On July 3, 2001, Kovacs filed a petition in bankruptcy under chapter 7. She received her bankruptcy discharge on October 10, 2001. On February 26, 2002, Kovacs' chapter 7 bankruptcy case was closed.

On November 5, 2001 (during the time this bankruptcy case was still pending but after Kovacs received her discharge), the IRS notified Kovacs that it had applied $300 from her tax refund due for the year 2000 to her outstanding tax liability for the year 1991.

On March 5, 2002, Kovacs wrote a letter to the IRS seeking to reinstate the terminated 1996 OIC. She also informed the IRS that she had filed a petition in bankruptcy under chapter 7 in "August of 2001."[1] Kovacs further informed the IRS that she received her bankruptcy discharge in October of 2001.

On March 7, 2002, Kovacs met with Atty Douglas H. Frazer who had represented her in negotiating the 1996 OIC. Atty Benjamin C. Grawe, an associate of Atty Frazer, was also present at this meeting. The purpose of this meeting was for Kovacs retaining Atty Frazer to deal with her income tax problems which resulted from her terminated 1996 OIC.

On March 13, 2002, Atty Frazer initiated discussions with the IRS seeking to reinstate the 1996 OIC. On April 2, 2002, Attys Frazer and Grawe submitted a new OIC. The April 2, 2002 OIC was returned to Attys Frazer and Grawe on June 24, 2002 by Ms. Mary Buckner, IRS process examiner, who stated that it could not be considered because the bankruptcy case was "still open." This caused Attys Frazer and Grawe to re-submit to the IRS the April 2, 2002 OIC on July 8, 2002, together with a copy of Kovacs' bankruptcy discharge, for reconsideration.

Negotiations continued between the IRS and Kovacs, by her attorneys, Frazer and Grawe.

---

[1]     The bankruptcy petition was actually filed on July 3, 2001. The IRS was listed as a creditor and also was on the mailing matrix.

On July 8, 2002, the IRS mailed to Kovacs a series of notices of intent to levy on Kovacs' assets with respect to her outstanding tax liabilities for the tax years in question and also for 1999. The tax liabilities contained in these notices totaled over $154,000.

On January 30, 2003, the IRS rejected Kovacs' July 8, 2002, OIC. Kovacs appealed that determination, and the appeal was assigned to IRS Appeals Officer Teresa Mulcahy. Communications continued in efforts to resolve this dispute. On August 14, 2003, Ms. Mulcahy sent a letter to Kovacs informing her that the IRS concluded that the tax liabilities for all of the tax years in question were dischargeable debts but the tax liability for 1999 was not a dischargeable debt.[2] The nondischargeable 1999 tax liability was then satisfied by transferring the 2001 tax refund from the discharged 1990 tax year to the non-dischargeable 1999 tax liability, together with credits applied from other discharged tax years.

On January 19, 2005, Kovacs' attorneys filed an administrative claim with the IRS for damages in the amount of $11,822.94. This claim was not responded to by the IRS.

On August 11, 2005, Kovacs filed this adversary proceeding for damages against the United States in an unspecified amount. Whenever reference is made in this decision to the IRS, it shall equally apply to the United States and vice versa.

A trial was held on March 19, 2007.

## PHASE II

During the pretrial phase of this adversary proceeding, both sides filed voluminous pleadings, starting with the adversary complaint and over 100 pages of exhibits.

---

[2]      Shortly after Ms. Mulcahy's notice was sent to Kovacs, the IRS on September 8, 2003 sent a notice to Kovacs labeled "Statement of Adjustment to Your Account" informing her that she owed $13,222.43 for 1990 taxes. It appears that this was an inadvertent clerical error by the IRS mailed without knowledge of Ms. Mulcahy's August 14, 2003 letter to Kovacs.

On October 19, 2005, the IRS filed a 23-page motion to dismiss this adversary, supported by an additional 29 pages of exhibits. That motion to dismiss was ultimately denied.

On July 7, 2006, the IRS filed a 41-page motion for summary judgment, supplemented by 226 pages of exhibits. On August 17, 2006, Kovacs responded to the IRS's motion for summary judgment and in addition filed its own motion for summary judgment, which included 183 pages of exhibits. On September 1, 2006, the IRS responded to Kovacs' motion for summary judgment and, in addition, submitted a 14-page reply with 108 pages of exhibits attached to Kovacs' response to the IRS's motion for summary judgment. The IRS also filed on September 1, 2006 a separate motion to strike, containing 84 pages of exhibits.[3]

On October 30, 2006, the court denied the cross motions for summary judgment and set a trial date. At the October 30, 2006 hearing, the court admonished both sides for submitting an overabundance of pleadings in this case.[4]

## PHASE III

At the start of this trial, the IRS conceded that it had willfully violated 11 U.S.C. § 524(a) of the Bankruptcy Code by virtue of its attempts to collect discharged tax debts. Kovacs informed the court that her damages resulting from this violation consist entirely of her attorney's fees and costs. This left, as the only remaining issue in the trial, the issue of damages.

Section 524(a) provides that, upon a discharge being granted to a debtor, such discharge constitutes a permanent injunction against the commencement or continuation of any actions taken by a creditor, including any attempts by the IRS to collect a discharged debt as a

---

[3]     Complicating matters even further, on September 20, 2006, Kovacs, in opposing IRS's September 1, 2006 pleadings, erroneously filed over 14,000 pages of exhibits. See docket entries 42 and 43.

[4]     Atty David V. Meany, on behalf of Kovacs, and Assistant U. S. Attorney Hilarie Snyder of the U. S. Department of Justice, representing the IRS, are the attorneys who tried this case. Neither of these attorneys were involved in the handling of any of the pleadings which the court referred to in the October 30, 2006 hearing.

personal liability of the debtor. Numerous cases hold that reasonable attorney's fees and costs may be recovered against the IRS for willful violation of § 524. See In re Hardy, 97 F.3d 1384 (11th Cir. 1996); In re Riser, 298 B.R. 469, 473-74 (Bankr. M.D. Fla. 2003); In re Elias, 98 B.R. 332 (Bankr. N.D. Ill. E.D. 1989); In re Lowthorp, 332 B.R. 656 (Bankr. M.D. Fla. 2005); In re Pinkstaff, 974 F.2d 113 (9th Cir. 1992); In re Jove Engineering, Inc., 92 F.3d 1539 (11th Cir. 1996); and In re Price, 42 F.3d 1068 (7th Cir. 1994).[5]

The following is a summary of the pertinent testimony on the issue of damages.

### NANCY KOVACS

Most of Kovacs' testimony dealt with tracing the various events leading up to this dispute, encompassing the Phase I period. Kovacs did, however, also testify to receiving invoices for legal services which were provided by Attorneys Frazer and Grawe. She acknowledged having made some payments to her attorneys and further said that she would be liable for any unpaid balance.

### ATTORNEY BENJAMIN C. GRAWE

Atty Grawe testified that he worked on the Kovacs' case with Atty Frazer, who was his supervising attorney. He testified as to the nature of the services that he and Atty Frazer performed for Kovacs and that the amount of attorney's fees and costs which was initially requested in Phase I was reduced from $11,822.94 (as contained in Kovacs' administrative claim) to $8,622.09.

Atty Grawe also testified with respect to the issue of dischargeability of taxes for the years in question. He stated that he had contacted Atty Michael D. Schuman, who represented Kovacs in the filing of her bankruptcy petition. However, his contact with Atty Schuman was only

---

[5]     Jove and Price dealt with § 362, the automatic stay, rather than § 524. However, the reasoning which applies to § 524 violations equally applies to § 362 violations.

for the purpose of obtaining a copy of Kovacs' bankruptcy discharge and for the purpose of obtaining a new OIC. He acknowledged that he did not discuss with Atty Schuman the issue of whether the unpaid taxes were dischargeable.

Atty Grawe stated that he reasonably relied on the IRS with respect to its determination on nondischargeability of the tax years in question. He acknowledged that, when the OIC was first submitted on April 2, 2002 (and again on July 8, 2002), he did not check the box in Item 6 of the OIC labeled "doubt as to liability." He also said that he had never contacted anyone in the Insolvency Unit prior to August of 2003, which was the first time the subject of dischargeability of taxes for the years in question was raised by IRS Appeals Officer Mulcahy.

He also testified that he and Atty Frazer had a conversation about dischargeability for the years in question in this case in April of 2002. They concluded that, when the 1996 OIC had terminated, the taxes for the years in question were nondischargeable because the termination occurred less than 240 days before Kovacs filed her bankruptcy petition and, in their view, it was a "reassessment" of the taxes, causing the 240-day period to start anew for all of the years in question and causing these taxes to be nondischargeable.

## AL GROSS

Mr. Gross testified pursuant to a subpoena served upon him by Kovacs. He is a former IRS employee who worked for the IRS for approximately 30 years. He last worked as an advisor in the Offer In Compromise Unit. He stated that he never worked in the IRS Insolvency Unit but had dealings with that unit.

It was Mr. Gross who signed the September 13, 2002 letter informing Kovacs that she defaulted in her 1996 OIC. He testified that he did not recall Kovacs or the Kovacs matter at all.

Upon questioning by Kovacs' attorney, he stated he was unaware of any provision in the Internal Revenue Code which placed the burden upon a taxpayer to determine whether or not a tax liability is dischargeable. He responded to questioning by stating that, in his opinion, there is a burden on the taxpayer to determine if the IRS made a mistake about dischargeability of a tax liability arising out of a bankruptcy. He also stated that, if the taxpayer is represented by an attorney, that burden then falls upon the taxpayer's attorney. He further testified that, if the IRS had not exercised due diligence with respect to the issue of dischargeability of a tax, it is responsible for its own mistakes.

## ATTORNEY DOUGLAS H. FRAZER

Atty Frazer's testimony was essentially limited to authenticity of exhibits and affirmance of uncontested facts. This was in accordance with his March 15, 2006 statement filed in this adversary proceeding concerning attorney witnesses, notifying the court that this would be the extent of his testimony.

He testified that he had been a member of the law firm of DeWitt, Ross & Stevens since November of 2003. Prior to that, he had his own firm known as Frazer & Schapiro, which was merged into DeWitt, Ross & Stevens. He also stated that he previously was a trial attorney with the U.S. Department of Justice in the Tax Division and from time to time worked with the IRS Insolvency Unit and handled some bankruptcy cases. He stated that his law practice focuses primarily upon tax matters and that, if he had testified in full in this case, it would be essentially the same as the testimony given by Atty Grawe.

Atty Frazer acknowledged on cross-examination that he had written an article on income taxes in bankruptcy entitled "Taxpayers May Find Relief in Chapter 7 Bankruptcy," which was published in The Milwaukee Journal-Sentinel, a local daily newspaper, in March of 1995. He

-8-

stated that he had a "working knowledge of the dischargeability rules of bankruptcy." He further stated he believed that the Kovacs' situation was "unusual and unique" and that his article published in The Milwaukee Journal-Sentinel was intended for the general public and has no bearing upon the Kovacs case.

## JACK PHILLIPS

Mr. Phillips is a retired IRS field collection officer, having worked in that capacity for his entire 30 years of employment from 1972 to 2002. He testified as an expert witness on behalf of Kovacs. He stated that while he was employed by the IRS, although he never worked in the IRS Insolvency Unit, he did from time to time work with that unit. He said he was familiar with its responsibilities, including determining the issue of tax dischargeability after a taxpayer files for bankruptcy. He said it is the IRS Insolvency Unit's responsibility to determine whether a tax debt is dischargeable, and in his opinion, it was reasonable for Kovacs' attorneys (1) to have relied upon the IRS's determination that the taxes for the years in question were all nondischargeable debts and (2) to submit a new OIC. He also testified that, in his opinion, the Insolvency Unit rarely makes mistakes on issues of dischargeability of taxes. He added that, if he had a case and the tax payer or tax payer's representative told him they thought the taxes had bee discharged, he would have gone directly to the Insolvency Unit for a determination. On cross examination, he stated that it is not only unreasonable to submit an OIC when taxes have been discharged but that to do so would be "stupid."

## TERESA MULCAHY

Teresa Mulcahy, an IRS appeals officer, testified on behalf of the IRS. She has been with the IRS for 27 years. She worked on the Kovacs' case in connection with the appeal of the July 8, 2002 OIC submitted by Kovacs. She acknowledged that, in handling that appeal, her

-9-

discussions with Atty Grawe were limited to obtaining financial information and that at no time did Atty Grawe raise the possibility that any of the unpaid taxes for the years in question were dischargeable. She stated that she was the person who first raised that possibility in mid-August of 2003 in a conversation she was having with Atty Grawe. She then stated, after talking with Mr. Frank Cox of the IRS Insolvency Division, that the conclusion was made that the unpaid taxes for all of the tax years in question were dischargeable debts, but the unpaid tax for 1999 was a nondischargeable debt.

On cross examination, Ms. Mulcahy said it is reasonable for a taxpayer to rely on the IRS's determination of dischargeability and that it is not appropriate to place a burden upon a taxpayer or a taxpayer's attorneys to discover any mistakes made by the IRS. She added that the IRS Insolvency Unit typically "does not make mistakes on the issue of dischargeability of debts," adding that "whoever looked at whether the taxes should have been discharged made a mistake."

## FRANK COX

Mr. Cox was a revenue officer advisor who had worked for the IRS for 32 ½ years and retired in January of 2004. He worked in the IRS Insolvency Unit for the final 13 ½ years of his career and handled dischargeability of tax issues. He provided testimony at this trial on behalf of the IRS. Mr. Cox explained in detail the IRS Insolvency Unit's procedure in determining what tax debts are dischargeable and what tax debts are not dischargeable. He also explained how the automatic discharge system ("ADS") works in determining dischargeability of taxes for chapter 7 bankruptcy cases. He added that, in some cases, however, the system is unable to handle the issue of dischargeability, and in such cases, it would submit an error report. When that occurred, the issue of dischargeability would be processed by Insolvency Unit specialists. He explained the various factors in making that determination, including a discussion of the 240-day rule, the 3-year rule, and

the 2-year rule.[6] He acknowledged that he frequently answered inquiries regarding dischargeability of taxes when he was contacted by taxpayers, counsel for taxpayers, and other IRS agents, in connection with pending OIC matters. He stated that his involvement on the Kovacs case was limited and that he first become involved in this case in August of 2003 in a telephone call from Ms. Mulcahy on the issue of dischargeability of the Kovacs' debts for the years in question. After analyzing the tax debts for the tax years in question, he stated that he could not find anything that stood in the way of discharging these tax debts, but also said that the tax debt for 1999 was not discharged. He stated that, after making this determination, he then took steps to reduce the tax balances for the discharged tax years in question to zero and removed various tax credits which had been inappropriately applied.

On cross-examination, Mr. Cox agreed that the IRS made a mistake in its determination of dischargeability of tax liabilities for the tax years in question and had numerous opportunities between November 2001 and August 2003 to discover its mistake. He confirmed that it is the Insolvency Unit which is the party responsible for this mistake and that there is no obligation on the part of the taxpayer to object to the IRS determination. Mr. Cox did not, however, concede on cross examination that the IRS was totally responsible for this mistake or that the application by the IRS of Kovacs' $300 tax refund for the year 2000 and applied to her outstanding tax liability for the year 1991 which was dischargeable, was a violation of § 524(a) of the Bankruptcy Code,

---

[6]     An exception to discharge for income tax liabilities can arise by means of a variety of circumstances, including any of the following:

1.     Taxes resulting from deficiency assessments made by the IRS within 240 days before filing of a bankruptcy petition ("240-day rule");
2.     Unpaid taxes for returns which were filed within three years of date of bankruptcy before filing bankruptcy petition ("3-year rule"); and
3.     Unpaid taxes arising out of late filed tax returns which were filed within two years before filing a bankruptcy petition ("2-year rule").

In this case it is the 240-day rule which is involved.

explaining that this was a valid set-off under § 553 of the Bankruptcy Code. He disagreed with the testimony of Mr. Phillips that it was reasonable for a taxpayer's attorney to assume that the tax liabilities for the tax years in question were nondischargeable and further stated it was not reasonable for Kovacs' attorney to conclude that the tax liability fell within the 240-day rule as an "assessment," instead of a "reinstatement." He added that in this case when Kovacs' OIC was terminated on January 29, 2001, it resulted in a reinstatement of the unpaid taxes and not an assessment.

## DAMAGES

Kovacs is seeking recovery of $8,622.09 for legal services performed on her behalf in Phase I (prior to the commencement of this adversary proceeding). She also seeks $106,198.37 for her litigation costs in Phases II and III (commencing with this adversary proceeding to the present time). The combined total of Phases I, II, and III sought by Kovacs totals in the aggregate **$114,820.46**.

The IRS, on the other hand, responds that, if Kovacs is entitled to any recovery against the IRS, it should be limited to Phase I in an amount less than $8,622.09 and no recovery in Phases II and III.

Thus, there is a huge gap between the positions of these parties.

26 U.S.C. §§ 7430 and 7433 of the Internal Revenue Code[7], which are annexed as an appendix to this decision, must be taken into consideration in addressing the issue of damages. However, before addressing the impact of these sections, the court shall initially determine what is the reasonable amount of fees and costs for the representation on behalf of Kovacs. In evaluating the reasonable attorney fees, the court is guided by the reasonable hourly rate which is then

---

[7] Because §§ 7430 and 7433 of the Internal Revenue Code apply in this case, § 2412 of the Equal Access to Justice Act does not apply. In re Abernathy, 150 B.R. 688, 696, n. 11 (Bankr. N.D. Ill. 1993).

multiplied by the reasonable number of hours required to complete the task at hand. In re Hudson, 364 B.R. 875 (Bankr. N.D. N.Y. 2007).

## Reasonable attorney's fees and costs in Phase I

Kovacs' voluntary reduction from $11,822.94 as originally asserted in her administrative claim to $8,622.09 is a recognition by her that the legal fees incurred in connection with the nondischargeable tax debt for 1999 are not recoverable against the IRS.

Exhibit 37 contains the billing records for Kovacs' attorneys during Phase I. While there is some duplication of legal services between Attys Frazer and Grawe, it is relatively minimal. The court does not further reduce the hours of legal services in Phase I, which, after Kovacs' voluntary reduction, total 43 hours.

The statutory attorney's fees and costs allowable under 26 U.S.C. § 7430(c)(1)(B)(iii) during this period was $150 per hour.[8] Multiplying this $150 hourly statutory rate by 43 hours results in **$6,450**, which this court finds constitute Kovacs' reasonable attorney's fees and costs in Phase I.

Kovacs asserts that this court has the authority to award a higher hourly rate where special factors exist. In In re Seay, 369 B.R. 423 (Bankr. E.D. Ark. 2007), the court provided examples of what constitutes special factors which may justify awarding a higher fee. These include: limited availability of qualified attorneys for such proceedings, difficulty of issues presented, and local availability of tax expertise. This court concludes that no such factors or any other factors existed in this case to warrant any increase in the $150 hourly rate provided under § 7430 of the Internal Revenue Code.

---

[8]Although the IRS in its post-trial brief applied $125 per hour as the statutory hourly rate, upon a review of the rate during this period of time was $150 per hour.

## Reasonable litigation costs[9] in Phases II and III

Phases II and III comprise Kovacs' litigation costs incurred from the commencement of this adversary proceeding through and including the present time. Because of the overlap of litigation costs in Phases II and III, during the pretrial stages, and in the trial and post-trial itself, Phases II and III are considered collectively.

They total the following:

| | |
|---|---|
| Fees | $103,670.00 |
| Court costs | $   2,528.37 |
| **TOTAL LITIGATION COSTS** | **$106,198.37** |

All of these shall now be separately addressed.

## Atty Douglas H. Frazer

Atty Frazer's legal fees during Phases II and III total 170.3 hours, which he has billed at an hourly rate of $250, representing a total of $42,575. A substantial portion of these fees encompass conferences he had with Atty Grawe. In some cases, there were conferences between Atty Frazer and Atty Van de Kamp, resulting in a duplication of charges.

Atty Frazer's billing rate of $250 per hour exceeds the maximum statutory rates authorized under 26 U.S.C. § 7430 for the periods 2005, 2006, and 2007. The statutory fee caps during these periods under § 7430 were: $150 per hour for 2005; $160 per hour for 2006; and $170 per hour for 2007.

This court concludes as it did in its discussion of Atty Frazer's fees in Phase I that there were no special factors in Phases II and III warranting an increase in Atty Frazer's hourly rate beyond the allowed statutory fee cap.

---

[9] The term "litigation costs" when used for Phases II and III includes both attorney's fees and costs.

-14-

In addition, adjustments are required not only for duplication of charges but also for excessive charges. This court in convinced that the total hours submitted by Atty Frazer – 170.3 hours – are well beyond what was required in this dispute. In addressing the reasonableness of litigation costs, a court must be alert to the particular circumstances involved. Digital Products, 215 B.R. 478, 482 (Bankr. S.D. Fla. 1997) ("The fees must be cost justified by the economics of the situation."). Where a § 524(a) violation is the subject of the dispute, this section must not be utilized as a profit-making endeavor. In re Duling, 360 B.R. 643, 647 (Bankr. N.D. Ohio 2006). That point has also been emphasized by other courts. See In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995), in which Judge Posner declared that: "A bankruptcy is not intended to be a feast for lawyers." See also In re Hutter Construction Co., Inc., 126 B.R. 1005, 1012 (Bankr. E.D. Wis. 1991) (Judge Eisenberg, quoting from Unsecured Creditors Committee v. Puget Sound Plywood, Inc., 924 F.2d 955, 958 (9th Cir. 1991), declared that: "A professional must not be free to run up a tab without considering the maximum probable recovery").

This court concludes that a reasonable fee for Atty Frazer's services in Phases II and III is **$20,000**.

**Atty Benjamin C. Grawe**

Atty Grawe's fees during Phases II and III total 19 hours at an hourly rate of $160 per hour for the year 2006 and $170 per hour for the year 2007. This results in a combined total of **$3,055**, which is in accordance with the hourly rates allowed in 26 U.S.C. § 7430. No adjustments shall be made.

**Atty Timothy Van de Kamp**

Atty Van de Kamp's legal services in Phases II and III total $13,243, which this court finds excessive. Atty Van de Kamp drafted the complaint in this case, which contained more than

100 pages of attached exhibits. This was unnecessary and inappropriate. At the October 30, 2006, hearing the court noted that Fed. R. Civ. P. 8(a)(2) requires pleadings to contain a short and plain statement of the claim or claims involved, which certainly was not the case here.

Judge Goldbar in In re Fidanovski, 347 B.R. 343, 348 (Bankr. N.D. Ill. 2006), stated as follows:

> A complaint must allege some facts, true enough. ... But it need not allege – indeed, should not allege – "all of the evidence needed to prevail at trial." Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998) (declaring that plaintiffs should not be "larding their complaints with facts"). A complaint "'does not have to plead evidence'"....

Over 20 hours was charged by Atty Van de Kamp for his research in preparation of the adversary complaint for the violation of § 524(a). This court finds this time to have been excessive and unwarranted in light of the potential maximum recovery involved. There also were several occasions where Atty Van de Kamp attended meetings with other members of his firm and where all of the attorneys involved submitted separate billing charges. Sometimes, there was a duplication of charges. Other times, it was triplication of charges. One such example appears on March 7, 2006, where Attys Frazer, Grawe, and Van de Kamp all submitted billing charges for a single conference.

Atty Van de Kamp's reasonable attorney's fees are **$7,500**.

**Atty David V. Meany**

Atty Meany's fees in Phases II and III total **$16,868** and are based upon the statutory hourly charges provided in 26 U.S.C. § 7430. The court finds his billing rate is reasonable, and no adjustments are made.

## Law Clerks/Paralegals

The total amount of billing charges for law clerks/paralegals is $22,624. The bulk of these charges were submitted by Ms. Whitney Vallier. A review of Ms. Vallier's time records reflects a substantial amount of time was devoted to her work on briefs, which the court, under the circumstances of this case, concludes was excessive. Moreover, the court notes among her charges are a number of interoffice conferences primarily with Atty Frazer, but also in some cases with Atty Meany, in which both she and the attorney involved submitted billings. In addition, there were occasions where three parties were engaged in a conference, with all charging for the same conference. By way of example, see conferences held on June 19, 2007; June 20, 2007; July 3, 2007; July 6, 2007; and July 9, 2007.

The court finds that the total reasonable charge for law clerks/paralegals is **$12,500**.

## Jack Phillips

Mr. Phillips testified as an expert witness for Kovacs. His bill, submitted by Hintzke & Associates, Inc., for whom Mr. Phillips was employed, totaled $5,250, based upon 30 hours at an hourly rate of $175.

Mr. Phillips testified that he was paid $25 per hour by Hintzke & Associates, Inc. He also said that he didn't think he was getting paid for his testimony in court.

The court finds that the requested billing of $5,250 is unreasonable and that a reasonable rate for Mr. Phillips' services as an expert witness in this case is $100 per hour, resulting in a total allowed expert witness fee of **$3,000**.

## Court costs

The court costs billed totaling **$2,528.37** are found to be reasonable, and no adjustment is made.

## Summary of reasonable attorney's fees and costs in Phases I, II, and III

The court finds that the total amount of litigation costs in Phases II and III, as adjusted by the court, is **$65,451.37**. When this is combined with the reasonable attorney's fees of **$6,450** in Phase I, the aggregate total of attorney's fees and costs in Phases I, II, and III is **$71,901.37**.


## WHAT PORTION, IF ANY, OF THE REASONABLE ATTORNEY'S FEES AND COSTS SHOULD BE BORNE BY THE IRS?

This question requires an analysis of §§ 7430 and 7433 of the Internal Revenue Code, appearing in the annexed appendix, with respect to the following key points:

1. Did Kovacs exhaust her administrative remedies?

2. Is Kovacs the "prevailing party," is § 524(a) the "most significant issue in this case," and is the IRS's position "substantially justified"?

3. Did the IRS's breach of § 524(a) discharge injunction cause the damages sustained by Kovacs?

4. Did Kovacs "incur" the litigation costs upon which her claim is based?

5. Was any portion of the administrative or court proceedings unreasonably protracted by Kovacs or her attorneys?

6. Did Kovacs reasonably mitigate her damages?

### 1. Did Kovacs exhaust her administrative remedies?

Sections 7430(b) and 7433(d) of the Internal Revenue Code both require that a party seeking to recover damages must first exhaust such administrative remedies available to that party within the IRS. Kovacs has complied, having first submitted an administrative claim to the IRS. That claim was never responded to, and Kovacs then filed this adversary proceeding after the 6-month period to respond expired following the date that her administrative claim was filed. The IRS

-18-

has not disputed this requirement. The court concludes that Kovacs did exhaust her administrative remedies.

2.      **Is Kovacs the "prevailing party" in this adversary proceeding, is § 524(a) the "most significant issue" in this case, and is the position of the IRS "substantially justified"?**

Section 7430(a) states that a "prevailing party" may recover damages. Subsection (A) of § 7430(c)(4) defines a "prevailing party" as "any party in any proceeding to which subsection (a) applies" and which "has substantially prevailed with respect to the most significant issue or set of issues presented. Subsection (B) of Sec. 7430(c)(4) declares "a party shall not be treated as the prevailing party in a proceeding to which subsection (a) applies if the United States establishes that the position of the United States in the proceeding was substantially justified." Thus, the court must deal with each of these questions: (1) Who is the prevailing party? (2) What is the most significant issue in this adversary proceeding? (3) Is the position of the IRS substantially justified? All of these inquiries are interrelated.

The IRS conceded at the commencement of the trial that it willfully violated § 524(a). This concession by the IRS, however, did not enable the IRS to remove this issue from its status as the most significant issue in this case. Much time and expense was incurred, particularly during the pretrial stages of this case, on that issue, as is apparent by extensive discovery and voluminous pleadings – all of which focused upon whether the IRS violated § 524(a).

The court concludes that Kovacs is the prevailing party by virtue of the IRS's conduct in continuing its collection efforts, in violation of § 524(a), that the violation of § 524(a) is the most significant issue in this case, and the position of the IRS is not substantially justified. See In re Abernathy, 150 B.R. 688, 695 (Bankr. N.D. Ill. E.D. 1993) (concluding that the debtor is entitled to

-19-

attorney's fees from the IRS for its overall conduct in attempting to collect discharged taxes and forcing the debtor to file suit, which conduct was characterized as "outrageous").

**3.    Did the IRS's breach of § 524(a) discharge injunction cause the damages sustained by Kovacs?**

Section 7433(b)(1) of the Internal Revenue Code requires that the damages must be "a proximate result" of reckless, intentional or negligent actions of an officer or employee of the IRS.

The IRS, while acknowledging it breached the permanent discharge injunction under § 524(a), maintains that its actions were not the proximate result but simply created a "condition" by which the injury was made possible as a result of a subsequent independent act. The IRS further contends that it was the mistake by Kovacs' attorneys with respect to the issue of dischargeability that was the proximate result and that Kovacs' attorneys should accept responsibility for this mistake.

For purposes of addressing solely the issue of proximate cause, the court finds that the IRS's actions were negligent and **a** proximate result of the resulting injury to Kovacs. It need not be the sole proximate result caused by the IRS's actions. Section 7433(b) specifically states that it must be "**a**" proximate result, which the court finds is the case here. Both sides created the problem and the resulting unwarranted damages. The consequences of Kovacs' actions through her attorneys in arriving at an erroneous conclusion on the issue of dischargeability of taxes is a matter this court shall further address in the later portion of this decision.

**4.    Did Kovacs "incur" litigation costs in this adversary proceeding?**

Under Section 7430(a)(2) of the Internal Revenue Code, the prevailing party is entitled to reasonable litigation costs "incurred" in a court proceeding.

The IRS argues that it should not be required to pay any of Kovacs' litigation costs because, under the terms of her contingency fee agreement with her attorneys, she is not legally obligated to pay for such costs unless the court orders such payments, relying upon Grigoraci v. Comm'r of Internal Revenue, 122 T.C. 272 (2004).

Kovacs has responded by citing the recent holding in In re Seay, 369 B.R. 423 (Bankr. E.D. Ark. 2007), in which the bankruptcy court concluded that the attorney's fees were incurred by the debtor even though under the terms of the debtor's fee agreement with his attorneys the debtor was only obligated to pay upon obtaining a fee award. Seay, in turn, cites Phillips v. Gen. Services Admin., 924 F.2d 1577 (Fed. Cir. 1991), which held that if an award of money is obtained by the client and the client is obligated under his agreement with his attorney to turn over such funds to the attorney, in that sense, the client has "incurred" the attorney's fees and costs which may be awarded. Seay distinguished Grigoraci by noting the facts in Grigoraci are dramatically different from those in Seay. The facts in Grigoraci are also far different from the facts in this case. In Grigoraci, the award sought by the taxpayer involved clerical work performed by the taxpayer's office manager and secretaries, who worked in an accounting firm of which the taxpayer was its chief executive officer. No attorney's fees were involved in Grigoraci.

Marre v. U.S., 38 F.3d 823 (5th Cir. 1994), provides further support for Kovacs in holding that a client with a contingency fee agreement who obtains a court award for damages has "incurred" litigation costs.

This court concludes that the results reached in Seay, Phillips, and Marre are sound and that Kovacs' contingency fee agreement with her attorneys does not mean that fees which are ultimately awarded by this court were not "incurred." Upon a court award of fees, such fees are then "incurred."

5.      **Did Kovacs unreasonably protract the administrative or court proceedings and/or fail to mitigate her damages?**

Because unreasonably protracting court proceedings and mitigation are so inextricably intertwined, they are considered together.

Section 7430(b)(3) of the Internal Revenue Code addresses the issue of unreasonably protracting court proceedings, and Section 7433(d)(2) of the Internal Revenue Code deals with mitigation of damages.

This case has been vastly over-lawyered, over-staffed, and over-pleaded in light of the amount which was initially involved. A bankruptcy court has the responsibility to prevent overreaching by attorneys. N.S. Varrott & Sons, 54 B.R. 221 (Bankr. E.D. Ark. 1985). More emphasis should have been placed by both sides in attempting to reach a prompt resolution instead of engaging in prolonged and costly litigation. In In re Ciccimaro, 364 B.R. 184, 193 n. 3 (Bankr. E.D. Pa. 2007), the court observed that the litigation over attorney's fees in that case might well subsume the underlying dispute and encouraged the parties to seek a consensual resolution. Unfortunately, in the case at bar, the attorney's fees and costs have subsumed the underlying dispute, which claim for damages has dramatically escalated from $11,822.94 to $114,820.46.

In In re Clayton, 235 B.R. 801 (Bankr. M.D. N.C. 1998), the court stated that a debtor seeking recovery of damages has a duty to exercise due diligence in mitigating damages. In this case, Kovacs failed to do so. A party seeking recovery of damages is entitled to competent and comprehensive legal representation, including the need to employ aggressive tactics when required. By the same token, however, such legal services must be reasonably incurred and not become overzealous. In re Kroh Bros. Development Co., 105 B.R. 515, 521 (Bankr. W.D. Mo. 1989).

-22-

Kovacs asserts that it was the IRS's litigation conduct which unreasonably protracted these proceedings. To some degree, that is true, particularly during Phase II of this adversary proceeding. However, Kovacs also had a substantial role in protracting this litigation. Neither party had a halo over its head. Kovacs' voluminous complaint and exhibits was only the start. The protracted litigation continued throughout the preparation of this case up to the time of trial. As far as this court is able to determine, no serious efforts were made by either party to reach an equitable resolution. The current demand by Kovacs for damages and IRS's response highlight how these parties have become polarized in their positions.

The court recognizes that attorney's fees are not always proportionate to the amount which is involved in the underlying dispute. However, the amount being demanded by Kovacs in this case – almost $115,000 – is clearly exorbitant and unjustified. A court must determine if the attorney hours which are invested are justifiable given the probable benefit to the client. In re MCorp. Financial, Inc., 160 B.R. 941, 951 (S.D. Tex. 1993); In re Arnold, 162 B.R. 775, 778 (Bankr. E.D. Mich. 1993).

In the course of reviewing other cases addressing the amount of damages resulting from willful violations of § 524 by taxing authorities, this court has not found any cases in which courts have awarded damages anywhere close to what is being asked in this case. See In re Bowling, 116 B.R. 659 (Bankr. S.D. Ind. 1990) ($5,000 request for attorney's fees found to be excessive and reduced to $1,200); In re Elias (court awarded $2,163.10 for attorney's fees); In re Ramsey, 342 B.R. 658 (Bankr. M.D. Fla. 2006) (court awarded $7,888.50 for attorney's fees); In re Hudson, 364 B.R. 875 (Bankr. N.D. N.Y. 2007) (court awarded $6,831.25 for attorney's fees).

The IRS also had a major role in causing damages to Kovacs and must shoulder a portion of these damages. The IRS is accountable for more than its initial mistake in concluding that

-23-

Kovacs' tax debts for tax years in question were not dischargeable, for its actions taken in pursuing collection of these tax debts, and for forcing Kovacs to bring this adversary proceeding. The IRS is also responsible, in part, for its conduct in unreasonably protracting this adversary proceeding and causing unwarranted litigation costs to be incurred by Kovacs.

The question is: **How much should the IRS be required to pay?**

## CONCLUSION

To divide reasonable attorney's fees on a 50/50 basis is overly simplistic.

While the IRS made a mistake on the issue of dischargeability, the record shows that, when the IRS ultimately discovered the mistake, it acted promptly to rectify this error. The court also notes that the IRS did not employ any aggressive collection tactics against Kovacs with respect to the taxes in question, such as initiating garnishment proceedings. Moreover, in determining what are appropriate sanctions for willful violation of § 524, a court must be mindful that such sanctions are remedial in nature and not punitive. In re Johnson, 362 B.R. 730, 741 (Bankr. N.D. W.V. 2007).

On the other hand, Kovacs' attorneys also made a mistake on the issue of dischargeability by their conclusion that the 240-day rule applied. Atty Frazer, a former employee of the U. S. Department of Justice who had worked in the past with the IRS Insolvency Unit, should have been more cautious before reaching that erroneous conclusion. He had other options which could have been pursued. Attys Frazer and Grawe could have consulted an attorney who specialized in bankruptcy matters on the issue of dischargeability. They had that opportunity when they called Atty Schuman, who filed the bankruptcy petition for Kovacs, to obtain a copy of the bankruptcy petition, but never raised with him the question of dischargeability of tax debts. They also could have filed an adversary proceeding for a determination from the bankruptcy court on this issue. In re Malin, 356 B.R. 535 (Bankr. D. Kan. 2006), declared that the interest of the debtor-taxpayer made

the issue of dischargeability of certain federal income taxes ripe for such determination in order to provide any hardship upon the debtor-taxpayer. Atty Frazer, also having been familiar with the IRS Insolvency Unit, could have contacted that unit directly instead of taking the route of filing a new OIC.

The court concludes that a fair portion of damages to be borne by the IRS is **$25,000**.

This decision constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 of the Federal Rules of Bankruptcy Procedure.

A separate order for judgment shall be entered.

Dated at Milwaukee, Wisconsin, this __11__ day of September, 2007.

BY THE COURT:

_James E. Shapiro_
JAMES E. SHAPIRO
U. S. BANKRUPTCY JUDGE

c:
David V. Meany, Esq.
Douglas H. Frazer, Esq.
DeWitt Ross & Stevens, SC
13935 Bishop's Drive, Ste. 300
Brookfield, WI 53005-6606

Hilarie Snyder, Esq.
Janene M. Marasciullo, Esq.
U. S. Department of Justice
P.O. Box 7238, Ben Franklin Station
Washington, DC 20044

▷
I.R.C. § 7430

**Effective: December 21, 2000**

UNITED STATES CODE ANNOTATED
TITLE 26. INTERNAL REVENUE CODE
**SUBTITLE F--PROCEDURE AND ADMINISTRATION**
**CHAPTER 76--JUDICIAL PROCEEDINGS**
SUBCHAPTER B--PROCEEDINGS BY TAXPAYERS AND THIRD PARTIES
→ **§ 7430. Awarding of costs and certain fees**

**(a) In general.** --In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for--

   **(1)** reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and

   **(2)** reasonable litigation costs incurred in connection with such court proceeding.

**(b) Limitations.--**

   **(1) Requirement that administrative remedies be exhausted.** --A judgment for reasonable litigation costs shall not be awarded under subsection (a) in any court proceeding unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service. Any failure to agree to an extension of the time for the assessment of any tax shall not be taken into account for purposes of determining whether the prevailing party meets the requirements of the preceding sentence.

   **(2) Only costs allocable to the United States.** --An award under subsection (a) shall be made only for reasonable litigation and administrative costs which are allocable to the United States and not to any other party.

   **(3) Costs denied where party prevailing protracts proceedings.** --No award for reasonable litigation and administrative costs may be made under subsection (a) with respect to any portion of the administrative or court proceeding during which the prevailing party has unreasonably protracted such proceeding.

   **(4) Period for applying to IRS for administrative costs.** --An award may be made under subsection (a) by the Internal Revenue Service for reasonable administrative costs only if the prevailing party files an application with the Internal Revenue Service for such costs before the 91st day after the date on which the final decision of the Internal Revenue Service as to the determination of the tax, interest, or penalty is mailed to such party.

**(c) Definitions.** --For purposes of this section--

   **(1) Reasonable litigation costs.** --The term "reasonable litigation costs" includes--

      **(A)** reasonable court costs, and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(B)** based upon prevailing market rates for the kind or quality of services furnished--

**(i)** the reasonable expenses of expert witnesses in connection with a court proceeding, except that no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States,

**(ii)** the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and

**(iii)** reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $125 per hour unless the court determines that a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate.

In the case of any calendar year beginning after 1996, the dollar amount referred to in clause (iii) shall be increased by an amount equal to such dollar amount multiplied by the cost-of-living adjustment determined under section 1(f)(3) for such calendar year, by substituting "calendar year 1995" for "calendar year 1992" in subparagraph (B) thereof. If any dollar amount after being increased under the preceding sentence is not a multiple of $10, such dollar amount shall be rounded to the nearest multiple of $10.

**(2) Reasonable administrative costs.**--The term "reasonable administrative costs" means--

**(A)** any administrative fees or similar charges imposed by the Internal Revenue Service, and

**(B)** expenses, costs, and fees described in paragraph (1)(B), except that any determination made by the court under clause (ii) or (iii) thereof shall be made by the Internal Revenue Service in cases where the determination under paragraph (4)(C) of the awarding of reasonable administrative costs is made by the Internal Revenue Service.

Such term shall only include costs incurred on or after whichever of the following is the earliest: (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals; (ii) the date of the notice of deficiency; or (iii) the date on which the first letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent.

**(3) Attorneys' fees.**--

**(A) In general.**--For purposes of paragraphs (1) and (2), fees for the services of an individual (whether or not an attorney) who is authorized to practice before the Tax Court or before the Internal Revenue Service shall be treated as fees for the services of an attorney.

**(B) Pro bono services.**--The court may award reasonable attorneys' fees under subsection (a) in excess of the attorneys' fees paid or incurred if such fees are less than the reasonable attorneys' fees because an individual is representing the prevailing party for no fee or for a fee which (taking into account all the facts and circumstances) is no more than a nominal fee. This subparagraph shall apply only if such award is paid to such individual or such individual's employer.

**(4) Prevailing party.**--

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(A) In general.**--The term "prevailing party" means any party in any proceeding to which subsection (a) applies (other than the United States or any creditor of the taxpayer involved)--

**(i)** which--

**(I)** has substantially prevailed with respect to the amount in controversy, or

**(II)** has substantially prevailed with respect to the most significant issue or set of issues presented, and

**(ii)** which meets the requirements of the 1st sentence of section 2412(d)(1)(B) of title 28, United States Code (as in effect on October 22, 1986) except to the extent differing procedures are established by rule of court and meets the requirements of section 2412(d)(2)(B) of such title 28 (as so in effect).

**(B) Exception if United States establishes that its position was substantially justified.**--

**(i) General rule.**--A party shall not be treated as the prevailing party in a proceeding to which subsection (a) applies if the United States establishes that the position of the United States in the proceeding was substantially justified.

**(ii) Presumption of no justification if Internal Revenue Service did not follow certain published guidance.**--For purposes of clause (i), the position of the United States shall be presumed not to be substantially justified if the Internal Revenue Service did not follow its applicable published guidance in the administrative proceeding. Such presumption may be rebutted.

**(iii) Effect of losing on substantially similar issues.**--In determining for purposes of clause (i) whether the position of the United States was substantially justified, the court shall take into account whether the United States has lost in courts of appeal for other circuits on substantially similar issues.

**(iv) Applicable published guidance.**--For purposes of clause (ii), the term "applicable published guidance" means--

**(I)** regulations, revenue rulings, revenue procedures, information releases, notices, and announcements, and

**(II)** any of the following which are issued to the taxpayer: private letter rulings, technical advice memoranda, and determination letters.

**(C) Determination as to prevailing party.**--Any determination under this paragraph as to whether a party is a prevailing party shall be made by agreement of the parties or--

**(i)** in the case where the final determination with respect to the tax, interest, or penalty is made at the administrative level, by the Internal Revenue Service, or

**(ii)** in the case where such final determination is made by a court, the court.

**(D) Special rules for applying net worth requirement.**--In applying the requirements of section 2412(d)(2)(B) of title 28, United States Code, for purposes of subparagraph (A)(ii) of this paragraph--

**(i)** the net worth limitation in clause (i) of such section shall apply to--

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(I)** an estate but shall be determined as of the date of the decedent's death, and

**(II)** a trust but shall be determined as of the last day of the taxable year involved in the proceeding, and

**(ii)** individuals filing a joint return shall be treated as separate individuals for purposes of clause (i) of such section.

**(E) Special rules where judgment less than taxpayer's offer.--**

**(i) In general.--**A party to a court proceeding meeting the requirements of subparagraph (A)(ii) shall be treated as the prevailing party if the liability of the taxpayer pursuant to the judgment in the proceeding (determined without regard to interest) is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted a qualified offer of the party under subsection (g).

**(ii) Exceptions.--**This subparagraph shall not apply to--

**(I)** any judgment issued pursuant to a settlement; or

**(II)** any proceeding in which the amount of tax liability is not in issue, including any declaratory judgment proceeding, any proceeding to enforce or quash any summons issued pursuant to this title, and any action to restrain disclosure under section 6110(f).

**(iii) Special rules.--**If this subparagraph applies to any court proceeding--

**(I)** the determination under clause (i) shall be made by reference to the last qualified offer made with respect to the tax liability at issue in the proceeding; and

**(II)** reasonable administrative and litigation costs shall only include costs incurred on and after the date of such offer.

**(iv) Coordination.--**This subparagraph shall not apply to a party which is a prevailing party under any other provision of this paragraph.

**(5) Administrative proceedings.--**The term "administrative proceeding" means any procedure or other action before the Internal Revenue Service.

**(6) Court proceedings.--**The term "court proceeding" means any civil action brought in a court of the United States (including the Tax Court and the United States Claims Court).

**(7) Position of United States.--**The term "position of the United States" means--

**(A)** the position taken by the United States in a judicial proceeding to which subsection (a) applies, and

**(B)** the position taken in an administrative proceeding to which subsection (a) applies as of the earlier of--

**(i)** the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or

**(ii)** the date of the notice of deficiency.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

26 U.S.C.A. § 7430

**(d) Special rules for payment of costs.--**

   **(1) Reasonable administrative costs.--**An award for reasonable administrative costs shall be payable out of funds appropriated under section 1304 of title 31, United States Code.

   **(2) Reasonable litigation costs.--**An award for reasonable litigation costs shall be payable in the case of the Tax Court in the same manner as such an award by a district court.

**(e) Multiple actions.--**For purposes of this section, in the case of--

   **(1)** multiple actions which could have been joined or consolidated, or

   **(2)** a case or cases involving a return or returns of the same taxpayer (including joint returns of married individuals) which could have been joined in a single court proceeding in the same court,

such actions or cases shall be treated as 1 court proceeding regardless of whether such joinder or consolidation actually occurs, unless the court in which such action is brought determines, in its discretion, that it would be inappropriate to treat such actions or cases as joined or consolidated.

**(f) Right of appeal.--**

   **(1) Court proceedings.--**An order granting or denying (in whole or in part) an award for reasonable litigation or administrative costs under subsection (a) in a court proceeding, may be incorporated as a part of the decision or judgment in the court proceeding and shall be subject to appeal in the same manner as the decision or judgment.

   **(2) Administrative proceedings.--**A decision granting or denying (in whole or in part) an award for reasonable administrative costs under subsection (a) by the Internal Revenue Service shall be subject to the filing of a petition for review with the Tax Court under rules similar to the rules under section 7463 (without regard to the amount in dispute). If the Secretary sends by certified or registered mail a notice of such decision to the petitioner, no proceeding in the Tax Court may be initiated under this paragraph unless such petition is filed before the 91st day after the date of such mailing.

   **(3) Appeal of Tax Court decision.--**An order of the Tax Court disposing of a petition under paragraph (2) shall be reviewable in the same manner as a decision of the Tax Court, but only with respect to the matters determined in such order.

**(g) Qualified offer.--**For purposes of subsection (c)(4)--

   **(1) In general.--**The term "qualified offer" means a written offer which--

      **(A)** is made by the taxpayer to the United States during the qualified offer period;

      **(B)** specifies the offered amount of the taxpayer's liability (determined without regard to interest);

      **(C)** is designated at the time it is made as a qualified offer for purposes of this section; and

      **(D)** remains open during the period beginning on the date it is made and ending on the earliest of the date the offer is rejected, the date the trial begins, or the 90th day after the date the offer is made.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(2) Qualified offer period.**--For purposes of this subsection, the term "qualified offer period" means the peri-od--

**(A)** beginning on the date on which the first letter of proposed deficiency which allows the taxpayer an op-portunity for administrative review in the Internal Revenue Service Office of Appeals is sent, and

**(B)** ending on the date which is 30 days before the date the case is first set for trial.

ATTORNEY FEE AWARD LIMITATION UNDER SUBSEC. (C)(1)(B)(III) OF THIS SECTION

<For attorney fee award limitation under subsec. (c)(1)(B)(iii) of this section for calendar year 2007, see section 3.40 of Revenue Procedure 2006- 53, set out as a note under 26 U.S.C.A. § 1.>

Current through P.L. 110-52 approved 08-01-07

Copr. © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

▷
I.R.C. § 7433

**Effective: July 22, 1998**

UNITED STATES CODE ANNOTATED
TITLE 26. INTERNAL REVENUE CODE
**SUBTITLE F--PROCEDURE AND ADMINISTRATION**
**CHAPTER 76--JUDICIAL PROCEEDINGS**
SUBCHAPTER B--PROCEEDINGS BY TAXPAYERS AND THIRD PARTIES
→ **§ 7433. Civil damages for certain unauthorized collection actions**

**(a) In general.** --If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in   section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

**(b) Damages.** --In any action brought under subsection (a) or petition filed under subsection (e), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the lesser of $1,000,000 ($100,000, in the case of negligence) or the sum of--

  **(1)** actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee, and

  **(2)** the costs of the action.

**(c) Payment authority.** --Claims pursuant to this section shall be payable out of funds appropriated under   section 1304 of title 31, United States Code.

**(d) Limitations.--**

  **(1) Requirement that administrative remedies be exhausted.**  --A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service.

  **(2) Mitigation of damages.** --The amount of damages awarded under subsection (b)(1) shall be reduced by the amount of such damages which could have reasonably been mitigated by the plaintiff.

  **(3) Period for bringing action.** --Notwithstanding any other provision of law, an action to enforce liability created under this section may be brought without regard to the amount in controversy and may be brought only within 2 years after the date the right of action accrues.

**(e) Actions for violations of certain bankruptcy procedures.**  --

  **(1) In general.** --If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service willfully violates any provision of   section 362 (relating to automatic stay) or 524 (relating to effect of discharge) of title 11, United States Code (or any successor provision), or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

26 U.S.C.A. § 7433

any regulation promulgated under such provision, such taxpayer may petition the bankruptcy court to recover damages against the United States.

**(2) Remedy to be exclusive.--**

**(A) In general.**--Except as provided in subparagraph (B), notwithstanding section 105 of such title 11, such petition shall be the exclusive remedy for recovering damages resulting from such actions.

**(B) Certain other actions permitted.**--Subparagraph (A) shall not apply to an action under section 362(h) of such title 11 for a violation of a stay provided by section 362 of such title; except that--

**(i)** administrative and litigation costs in connection with such an action may only be awarded under section 7430; and

**(ii)** administrative costs may be awarded only if incurred on or after the date that the bankruptcy petition is filed.

Current through P.L. 110-52 approved 08-01-07

Copr. © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.